UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| SANDRA LEAN HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:16-cv-120-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**\*\*\*\***

Plaintiff Sandra Lean Hunter brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On March 19, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB"). [TR 178-81]. She also protectively filed a

Title XVI application for supplemental security income ("SSI") on that date. [TR 182-93]. In both applications, Plaintiff alleged disability beginning January 5, 2013. [TR 178-81, 182-93]. Plaintiff's claims were denied initially and on reconsideration. [TR 47-100]. On November 14, 2014, Administrative Law Judge ("ALJ") Bonnie Kittinger held an administrative hearing at Plaintiff's request. [TR 25-46, 126-28]. ALJ Kittinger issued a written decision, denying Plaintiff's claim for benefits, on February 2, 2015. [TR 23-35].

At Step One of the disability determination process, ALJ Kittinger found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 13]. At Step Two, she concluded that Plaintiff had the following severe impairments: degenerative disc disease and carpal tunnel syndrome. [TR 13-14].

At Step Three, ALJ Kittinger explained that Plaintiff "does not allege that she has an impairment of listing level severity, nor has she met her burden of presenting medical evidence that supports such a finding." [TR 14]. Nevertheless, she "reviewed the medical evidence of record in its entirety and f[ound] that the claimant's impairments do not meet or equal the level of severity set forth in any of the listed impairments, including listing section 1.02 and 1.04 of Appendix 1." [*Id.*].

Before proceeding to Step Four, ALJ Kittinger found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work, as defined in 20 C.F.R. § 404.1567(c) and § 416.967(b). [TR 14-18]. She explained:

> The claimant is able to lift carry 20 pounds occasionally and 10 pounds frequently and is able to stand/walk six hours and sit six hours in an eight-hour day. She is able to climb ramps and stairs, stoop, kneel, crouch and crawl occasionally and frequently handle objects; but she should not climb ladders, ropes or scaffolds. She should avoid concentrated exposure to cold temperature extremes and vibration and should avoid hazards, such as dangerous machinery and unprotected heights.

[TR 15]. She then found that Plaintiff was capable of performing past relevant work as a house cleaner at Step Four. [TR 18].

Nevertheless, ALJ Kittinger proceeded to the final step of the sequential evaluation. [TR 18-20]. At Step Five, she determined that there were a significant number of other jobs in the national economy that Plaintiff could perform. [*Id.*]. ALJ Kittinger based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as a labor packer (5,500 Kentucky/280,000 nationally), bench assembler (4,000 Kentucky/197 nationally), or machine tender (7,000 Kentucky/339,000 nationally). [*Id.*]. Based on the testimony of the VE, ALJ Kittinger alternatively found that

4

Plaintiff was capable of making a successful adjustment to other work. [*Id.*]. Thus, she concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from January 5, 2013, the alleged onset date, through the date of the administrative decision. [*Id.*].

ALJ Kittinger's decision became the final decision of the Commissioner when the Appeals Council denied review on May 10, 2016. [TR 1-6]. Plaintiff filed the instant action on June 24, 2016. [DE 2]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 13, 15]. Plaintiff argues that ALJ Kittinger's administrative decision is not supported by substantial evidence for two reasons, both of which relate to the RFC assessment. First, she argues that ALJ Kittinger failed to afford controlling weight to the opinion of Dr. Bethany Crispin, her treating physician. Second, she contends that ALJ Kittinger erred in affording great weight to the opinions of two non-examining physicians, Dr. Jack Reed and Dr. Keith Bauer. The Court will address each of these arguments in turn.

## III.

In order to determine whether Plaintiff is able to perform past relevant work, the ALJ must first "evaluat[e] the medical evidence and the claimant's testimony to form an assessment of

[his or her] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). The residual functional capacity ("RFC") assessment is a determination of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 404.1545(a)(3). The aforementioned medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527(c).

## A. Treatment of Dr. Crispin's Opinion

A treating source is a "physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." *Id.*

"If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion but must apply other factors to determine what weight to give the opinion." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 437 (6th Cir. 2013) Such factors include "'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ must articulate "'specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *see also* 20 C.F.R. § 1527(d)(2) (explaining that such deference is given to treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] impairments").

In this case, Plaintiff had a treating relationship with Dr. Bethany Crispin. The administrative decision includes the following discussion of Dr. Crispin's opinion:

> Dr. Bethany Crispin at White House Clinic wrote a letter, dated March 2, 2014, stating the claimant had bilateral carpal tunnel syndrome and low back pain with radiation to her right leg. Carpal tunnel syndrome was confirmed by EMS on October 19, 2013, showing severe median nerve compression. Dr. Crispin reported the claimant experienced pain, weakness, and intermittent numbness and tingling in bilateral wrists and hands. She recommended restrictions as follows: Ms. Hunter is unable to lift more than 10 pounds occasionally. Wrist pain, tingling, and numbness are worsened by using hands for grasping, handling, and fingering; therefore limited to performing those activities occasionally throughout the day. The claimant has low back pain with radiation to her right leg and numbness in her right leg that is exacerbated with lifting more than 10 pounds occasionally and with prolonged sitting, standing, or walking. The claimant must change positions frequently in order to alleviate pain. Ms. Hunter also likely has fibromyalgia, with diffuse pain unrelated to the pain she experiences from her [l]ower back and wrists. She has been referred to rheumatology for further evaluation of probable fibromyalgia.
>
> …
>
> The claimant's visits to her primary care physician, Dr. Bethany Crispin, have been routine follow-up visits, usually at three-month intervals, except that she received ESIs for her bilateral CTS on several occasions. Dr. Crispin routinely noted that Lortab helped her low back pain and enabled her to perform activities of daily living. None of the treatment notes included recommendations for restriction of activities. She prescribed Zoloft for claimant's depression and routinely noted her psychiatric status to be normal; so the medication was apparently effective. These treatment notes are somewhat inconsistent with her letter dated March 2, 2014, wherein she states claimant is unable to lift more than 10 pounds occasionally and should perform grasping, handling and fingering only occasionally.

Although Dr. Crispin diagnosed fibromyalgia, a rheumatologist, as discussed below did not confirm this diagnosis.

Only slight weight is accorded to the opinion of Dr. Crispin because of the inconsistency with her treatment notes. Moreover, the claimant drives, shops, cooks, performs household chores, takes care of her disabled husband and minor son, attends church, visits relatives and handles family finances. These activities are consistent with light work activity.

[TR 17-18].

As this passage illustrates, ALJ Kittinger specifically stated that she was not giving controlling weight to Dr. Crispin's opinion regarding Plaintiff's limitations because it was inconsistent with Dr. Crispin's own treatment notes and Plaintiff's activities of daily living. She then provided specific examples of these inconsistencies. For example, she observed that Dr. Crispin did not recommend any restriction in Plaintiff's activities in her treatment notes, but then offered several restrictions in her March 2014 letter to SSA. She also noted that these restrictions were inconsistent with Plaintiff's activities of daily living and other medical evidence in the record.[2] Having

---

[2] Plaintiff insists that her activities of daily living were not inconsistent with the restrictions suggested by Dr. Crispin. She contends that "attending church, visiting relatives and handling family finances are sedentary activities that wouldn't require more than occasional grasping, handling or fingering" and that "[t]here is no indication that she 'takes care' of [her husband], other than doing some household activities like cooking and light laundry." [DE 13-1 at 6]. In making this argument, Plaintiff essentially asks the Court to reweigh her testimony and function report, then find that the reweighed evidence supports the restrictions suggested by Dr. Crispin. However, this Court's role is limited to determining whether there is substantial evidence to support the ALJ's decision. *Cutlip*, 25 F.3d at 286. It cannot conduct a de novo review or reweigh the evidence. *Id.* Thus, Plaintiff's argument fails.

identified these discrepancies, and having considered the nature and extent of the treatment relationship at issue, ALJ Kittinger decided to afford little weight to Dr. Crispin's opinion. Because ALJ Kittinger gave sufficiently specific reasons for the weight given to Dr. Crispin's opinion, and supported that conclusion with citations to evidence in the record, the Court finds that her weighing of this treating source opinion is supported by substantial evidence.

**B.    *Treatment of Dr. Reed's and Dr. Bauer's Opinions***

A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Instead, the ALJ must weigh the opinion by considering "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2). While an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-

examining source's opinion), deviation from this general approach

is not a *per se* error of law.  20 C.F.R. § 404.1527(c).

In her administrative decision, ALJ Kittinger stated:

> The undersigned also accords great weight to the State
> agency medical consultants, Dr. Jack Reed and Dr. Keith
> Bauer, who reviewed all available medical evidence and
> opined the claimant could perform light work activity,
> with weight restrictions and other restrictions to
> accommodate her low back and bilateral wrist
> impairments. The undersigned has determined more
> stringent restrictions are appropriate, based on the
> claimant's testimony.

[TR 18].

Here, Plaintiff complains that Dr. Reed's and Dr. Bauer's

opinions should not have been afforded great weight because they

were unable to review the results of EMG testing from October 9,

2013.  [DE 13-1 at 7].  This "abnormal study" revealed "evidence

of a severe bilateral median neuropathy at the wrists (carpal

tunnel syndrome), electrically similar in severity."  [TR 294].

Plaintiff suggests that Dr. Reed and Dr. Bauer would have opined

that additional restrictions were necessary if these test results

had been available to them.  This argument is based on nothing

more than speculation.  Although the EMG testing confirmed that

Plaintiff suffered from carpal tunnel syndrome, she had already

been receiving treatment for that condition for two years.  There

is simply no indication that confirmation of Plaintiff's condition

would have led Dr. Reed and Dr. Bauer to impose restrictions that

were not already warranted by two years of treatment notes.

Plaintiff also complains that the opinions of Dr. Reed and Dr. Bauer should not have been given great weight because they were contrary to Dr. Crispin's opinion. However, as the Court has already discussed, it was not *per se* error for ALJ Kittinger to give more weight to a non-examining physician's opinion than a treating source's opinion. Such treatment was permissible, so long as she gave "good reasons" for discounting the treating source's opinion and weighed the opinion of the non-examining physician using the appropriate factors. *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x at 437; 20 C.F.R. § 404.1527(c). ALJ Kittinger complied with the first of these requirements, as explained above. The Court further finds that ALJ Kittinger appropriately weighed the opinions of Dr. Reed and Dr. Bauer, as she considered the type of source and the consistency of their opinions with the record as a whole. Thus, the Court finds that ALJ Kittinger's weighing of these non-examining source opinions is also supported by substantial evidence.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Sandra Lean Hunter's Motion for Summary Judgment [DE 13] be, and is, hereby **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 15] be, and is, hereby **AFFIRMED**; and

(3) A Judgment will issue contemporaneously with this Memorandum Opinion and Order.

This the 3rd day of May, 2017.

Signed By:

_Joseph M. Hood_

Senior U.S. District Judge